# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FLENORD EVANS, | 1:08-CV-00629 LJO SMS HC |
| Petitioner, | |
| v. | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| KATHY MENDOZA-POWERS, Warden, | |
| Respondent. | |

Petitioner is a state prisoner proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. He is represented in this action by Marc E. Grossman, Esq.

**PROCEDURAL BACKGROUND**

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Superior Court of California, County of Los Angeles, following his conviction on November 6, 1992, by jury trial of aggravated mayhem with use of a shotgun for which he received a sentence of life with the possibility of parole plus three years. See Exhibits attached to Petition. His sentence commenced on June 9, 1994, and his minimum eligible parole date was March 10, 2001. Id.

On August 9, 2006, a subsequent parole suitability hearing was held before the California

Board of Parole Hearings (hereinafter "Board"). Id. Petitioner participated in the hearing and was represented by counsel. Id. At the conclusion of the hearing, the Board denied parole and deferred rehearing for two years. Id.

Petitioner then sought relief in the state courts. On March 9, 2007, he filed a petition for writ of habeas corpus in the Los Angeles County Superior Court. See Answer, Exhibit 1. The superior court denied the petition on September 6, 2007, in a reasoned decision. See Answer, Exhibit 2. He then filed a habeas petition in the California Court of Appeal, Second Appellate District, on October 2, 2007. See Answer, Exhibit 3. The petition was denied on January 22, 2008. Id. On January 28, 2008, Petitioner filed a petition for review in the California Supreme Court. See Answer, Exhibits 4-5. The petition was denied on March 19, 2008. See Answer, Exhibit 5.

Petitioner filed the instant petition for writ of habeas corpus in the United States District Court for the Central District of California on April 23, 2008. The petition was ordered transferred to this district on April 28, 2008. Respondent filed a motion to dismiss several claims on July 18, 2008, which the District Court granted in part on September 30, 2008. Grounds four and five of the petition were dismissed. Respondent then filed an answer to the petition on January 6, 2009, and Petitioner filed a traverse on January 12, 2009.

## FACTUAL BACKGROUND[1]

On July 2, 1992, Petitioner engaged in a conversation with the victim, Derek Brown. Petitioner then walked to his truck and returned with a shotgun. He shot Brown once, causing Brown to fall to the ground. He then shot Brown a second time. The blast from the shotgun was directed to the victim's right knee. Using the barrel of the gun, Petitioner lifted the victim's legs. The victim then called to Petitioner, stating, "That is enough," and Petitioner returned to his truck and drove off. Brown was taken to the hospital where his left leg was amputated due to multiple gunshot wounds. Later that evening, Petitioner was arrested by LAPD for attempted murder.

---

[1] This summary is derived from the facts set forth in the parole hearing which was taken in turn from the Los Angeles Police Department Probation Officer's Report and the Life Prisoner's Evaluation Report. See Exhibits attached to Petition.

2

**DISCUSSION**

I.      Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

Petitioner is in custody of the California Department of Corrections pursuant to a state court judgment. Even though Petitioner is not challenging the underlying state court conviction, 28 U.S.C. § 2254 remains the exclusive vehicle for his habeas petition because he meets the threshold requirement of being in custody pursuant to a state court judgment. Sass v. California Board of Prison Terms, 461 F.3d 1123, 1126-1127 (9th Cir.2006), *citing* White v. Lambert, 370 F.3d 1002, 1006 (9th Cir.2004) ("Section 2254 'is the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petition is not challenging his underlying state court conviction.'").

The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death Penalty Act which became effective on April 24, 1996. Lockyer v. Andrade, 538 U.S. 63, 70 (2003). Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer, 538 U.S. at 70-71; see Williams, 529 U.S. at 413.

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71,

*quoting* 28 U.S.C. § 2254(d)(1). In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Id., *quoting* Williams, 592 U.S. at 412. "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id.

Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. See Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir.2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

AEDPA requires that we give considerable deference to state court decisions. The state

court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir.2002), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

As noted above, Petitioner's claims were presented in a petition for writ of habeas corpus to the Los Angeles County Superior Court. See Answer, Exhibit 1. The superior court denied the claims in a reasoned opinion. See Answer, Exhibit 2. Petitioner then presented his claims to the appellate court and to the California Supreme Court. Both petitions were summarily denied. See Answer, Exhibits 3-5. The California Supreme Court, by its "silent order" denying review of the superior court's decision, is presumed to have denied the claims presented for the same reasons stated in the opinion of the superior court. Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

II.     Review of Petition

A parole release determination is not subject to all the due process protections of an adversary proceeding. Pedro v. Oregon Parole Board, 825 F.2d 1396, 1398-99 (9th Cir. 1987); see also Greenholtz v. Inmates of Nebraska Penal and Corr. Complex, 442 U.S. 1, 12 (1979) (explaining that due process is flexible and calls for procedural protections that particular situations demand). "[S]ince the setting of a minimum term is not part of a criminal prosecution, the full panoply of rights due a defendant in such a proceeding is not constitutionally mandated, even when a protected liberty interest exists." Pedro, 825 F.2d at 1399; Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir.1987). At a state parole board proceeding, an inmate is guaranteed the following process: 1) the inmate must receive advance written notice of a hearing, Pedro, 825 F.2d at 1399; 2) the inmate must be afforded an "opportunity to be heard," Greenholtz, 442 U.S. at 16; and 3) if the inmate is denied parole, the inmate must be told why "he falls short of qualifying for parole." Id. It is clear from the record these three guarantees were given. Petitioner received notice of the hearing, he was heard at the hearing and he was told why he did not qualify for parole.

"In Superintendent, Mass. Correc. Inst. v. Hill, the Supreme Court held that 'revocation of *good time* does not comport with 'the minimum requirements of procedural due process,' unless the findings of the prison disciplinary board are supported by *some evidence* in the

record.' 472 U.S. 445, 454 (1985), *quoting* Wolff v. McDonnell, 418 U.S. 539, 558 (1974)." Sass v. California Board of Prison Terms, 461 F.3d 1123, 1128 (9th Cir.2006) (emphasis added). The Ninth Circuit has held that this same standard also extends to parole determinations. Irons v. Carey, 505 F.3d 846, 851 (9th Cir.2007), *quoting* Hill, 472 U.S. at 457 ("We have held that 'the Supreme Court ha[s] clearly established that a parole board's decision deprives a prisoner of due process with respect to this interest if the board's decision is not supported by 'some evidence in the record,' or is 'otherwise arbitrary.'"). In assessing "whether a state parole board's suitability determination was supported by 'some evidence' in a habeas case, our analysis is framed by the statutes and regulations governing parole suitability determinations in the relevant state." Irons, 505 F.3d at 851. Here, the Court must look to California law and review the record. In reviewing the record and determining whether the "some evidence" standard is met, the Court need not examine the entire record, independently assess the credibility of witnesses, or re-weigh the evidence. Sass, 461 F.3d at 1128.

California law provides that after an inmate has served the minimum term of confinement required by statute, the Board "shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for" the prisoner. Cal. Penal Code § 3041(b). "[I]f in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison," the prisoner must be found unsuitable and denied parole. Cal. Code Regs. tit. 15, § 2402(a). The Board decides whether a prisoner is too dangerous to be suitable for parole by applying factors it has set forth in the California Code of Regulations.

Further, the California Supreme Court has recently stated:

> "[T]he relevant inquiry is whether the circumstances of the commitment offense, when considered in light of other facts in the record, are such that they continue to be predictive of current dangerousness many years after the commission of the offense. This inquiry is, by necessity and by statutory mandate, an individualized one, and cannot be undertaken simply by examining the circumstances of the crime in isolation, without consideration of the passage of time or the attendant changes in the inmate's psychological or mental attitude.

In re Lawrence, 44 Cal.4th 1181, 1221 (2008). The nature of the commitment offense "does not

in and of itself provide some evidence of current dangerousness to the public unless the record also establishes that something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state, indicates that the implications regarding the prisoner's dangerousness that derive from his or her commission of the commitment offense remain probative to the statutory determination of a continuing threat to public safety." Id. at 1214.

In denying parole in this case, the Board based its decision on the following factors: 1) The nature and gravity of the commitment offense; 2) An escalating pattern of criminal behavior, including violent and assaultive behavior, both pre- and post-incarceration; 3) Failure to benefit from society's previous attempts to correct Petitioner's criminality; 4) Petitioner's long history of substance and alcohol abuse and his failure to complete sufficient programming related thereto; 5) A psychological report which was not supportive of release; and 6) Limited parole plans. Petitioner argues: 1) That the denial of parole and the findings in support were arbitrary, unsupported by any evidence, inherent in the offense, and/or unchangeable factors that no longer have bearing upon his current parole risk; 2) That the panel's decision violated due process because the panel established no nexus between the offense factors and Petitioner's current parole risk; and 3) That an interminable denial of Petitioner's parole based solely on his unchangeable commitment offense and the historical record violates due process by converting his sentence to life without possibility of parole.[2] Nevertheless, a review of the Board's decision reveals the state court decision approving the Board's determination of unsuitability was not unreasonable, nor were Petitioner's due process rights violated.

The first factor mentioned by the Board in its decision was the commitment offense itself, and the Board determined the offense was committed in an especially heinous, atrocious and cruel manner. First, pursuant to § 2402(c)(1)(D), the Board determined the offense was carried out in an especially cruel and callous manner. In support of this finding, the Board noted the victim was particularly vulnerable because he was a friend of Petitioner who had just engaged him in conversation. See Exhibits attached to Petition, Board Decision, p. 50. Petitioner maimed

---

[2]The Court notes that three other claims were presented in the petition, but the District Court dismissed two of them as unexhausted and construed one as an argument regarding the standard of review.

the victim by firing at his legs and knees twice with a shotgun, and then lifted the victim's legs with the barrel of the shotgun thereby causing more pain and suffering. Id. Pursuant to § 2402(c)(1)(B), the Board determined the offense was carried out in a dispassionate and calculated manner. Again citing the facts of the case, the Board noted that Petitioner had just conversed with the victim who was his friend when he returned to his truck, retrieved his shotgun, and fired twice at the legs of the victim. See Exhibits attached to Petition, Board Decision, p. 50.

Next, pursuant to § 2402(c)(2), the Board determined Petitioner's previous criminal record, which included assaultive and violent behavior, indicated unsuitability. See Exhibits attached to Petition, Board Decision, p. 50.  The Board reviewed Petitioner's criminal history and Petitioner acknowledged having committed several crimes prior to the commitment offense, including: grand theft auto, battery, bank robbery, and battery while incarcerated. Id. at 13-16, 31. The Board also discussed the fact that Petitioner had served time for these offenses and noted in its denial decision that Petitioner had failed to profit from society's attempts to correct his negative behavior.

The Board also reviewed Petitioner's institutional behavior pursuant to § 2402(c)(6). While commending Petitioner for remaining disciplinary-free since 2000, the Board noted that Petitioner had sustained a battery conviction while incarcerated, three CDC-115 serious rules violations while in prison, including one for mutual combat, as well as five CDC-128 counseling chronos. See Exhibits attached to Petition, Board Decision, pp. 22, 31, 50-51. This certainly lends support to the Board's finding that Petitioner has a history of "violence, assaultive behavior, an escalating pattern of criminal behavior," and belies any claim by Petitioner that his criminal history is stale and no longer reliable. Id. at 50. If anything, his behavior has remained consistent except for the last several years.

Next, the Board noted Petitioner's long history of substance abuse and alcoholism. In the past, Petitioner abused alcohol to such an extent as to develop cirrhosis of the liver. Id. at 20-21, 28. He also used drugs to the extent that drug detoxification was required. Id. at 21, 28. The Board found that Petitioner had only a limited involvement in substance and alcohol abuse

programming. The Board noted that Petitioner had only participated in Alcoholics Anonymous since 2002 and deemed this amount insufficient at this point in light of Petitioner's history as well as the concerns noted in the psychological evaluation, which, as will be discussed below, stressed that Petitioner's danger to the public centered on his ability to refrain from drugs and alcohol. Id. at 51-52. This consideration is certainly relevant to the panel decision. See 15 C.C.R. § 2402(b).

The Board next discussed the psychological report which was not supportive of release. While the psychologist noted that his danger assessment is average for the parolee population, this assessment was made with the condition that Petitioner be able to remain clean and sober, and risky if he begins drinking again. See Exhibits attached to Petition, Board Decision, pp. 31, 51. Furthermore, the psychologist recommended against granting release at this point, stating, "He has not yet come to terms with his crime and cannot be scheduled (indiscernible) until he faces the fact that his victim is the one who is bearing the consequences every moment of his life for stealing a car radio. Perhaps, over time, he will be able to put his suffering and the victim's suffering into proper perspective." Id. at 31.

The Board also determined that Petitioner had very limited parole plans. Although his living arrangements appeared viable, his proposed employment was unsatisfactory. The Board determined Petitioner needed to make a more realistic employment plan.

The Board also found Petitioner to be untruthful. It noted that Petitioner had lied on several occasions to the panel, to the Department of Corrections, and to the State of California. For instance, he lied to the Department of Corrections about a mental condition in order to obtain a transfer. Id. at 29. He also misrepresented himself to the State of California as totally disabled while taking work as a waiter. Id. at 42-43. He also stated to the panel that the shotgun used in the crime was not his. He presented an elaborate story about the shotgun having been entrusted to him by a friend to place with a pawn shop. However, the district attorney read into the record a relevant portion of the appellate decision which revealed the shotgun recovered from Petitioner's truck was actually registered to him. Id. at 44-45. The Board found that Petitioner was minimizing his criminal behavior and concluded that Petitioner was not credible, remained

1  unpredictable, and therefore continued to pose a threat to public safety.

2  Given this record, Petitioner's claim that the panel's decision was arbitrary and
3  unsupported is meritless, and his claim that no nexus existed between the factors mentioned by
4  the panel and his current risk of dangerousness must fail. Substantial evidence supported the
5  panel's decision. The commitment offense was especially heinous, atrocious and cruel. Petitioner
6  had a long history of violent and criminal behavior beginning at a very young age and continuing
7  through his adulthood. This criminal behavior extended well into his incarceration, and only
8  recently has he made a noticeable change. The psychologist who evaluated Petitioner concluded
9  that he should not be released because he had not yet come to terms with his crime and remained
10 a risk in light of his lengthy and serious history of substance and alcohol abuse. He also presented
11 as a prevaricator. Indeed, he admitted to lying to the CDC and to the State of California, and he
12 was caught in lies at the hearing.

13 As well, his claim that the panel continues to rely on unchanging factors is without merit.
14 While it is true that in Biggs v. Terhune, 334 F.3d 910, 916-17 (9th Cir.2003), the Ninth Circuit
15 stated that "[a] continued reliance in the future on an unchanging factor, the circumstance of the
16 offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by
17 the prison system and could result in a due process violation," this is not the situation here. There
18 was much more to the panel's decision than a reliance on the commitment offense and previous
19 record of violence. As discussed above, Petitioner continued his criminal behavior in prison,
20 including instances of violent conduct. He has also failed to sufficiently program in substance
21 and alcohol abuse therapy so as to allay any fears that he may relapse into substance abuse upon
22 release. Indeed, he suffered a serious rules violation in prison for manufacturing alcohol, so his
23 claim that any problems with alcohol are no longer at issue is disingenuous.  He also has
24 demonstrated to the Board and to the evaluating psychologist a pattern of minimizing his
25 criminal behavior, placing blame on others, failing to own up to his own actions, and outright
26 lying. Given this record, Petitioner has demonstrated himself to be unbelievable, unpredictable,
27 and a risk to the public safety, and any affirmative evidence of a change in Petitioner's demeanor
28 and mental state is recent and questionable. Lawrence, 44 Cal.4th at 1219.

1    The Board concluded that Petitioner is a current risk of danger to the public. The state court found the Board's decision to be supported by at least some evidence. This Court cannot say in light of the record above that the state court's decision was unreasonable. The petition should be denied.

## RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. The Petition for Writ of Habeas Corpus be DENIED; and

2. The Clerk of Court be DIRECTED to enter judgment for Respondent.

This Findings and Recommendation is submitted to the Honorable Lawrence J. O'Neill, United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy of this Findings and Recommendation, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the Objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the Objections. The Finding and Recommendation will then be submitted to the District Court for review of the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the Order of the District Court. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   January 29, 2009**            /s/ Sandra M. Snyder
                                        UNITED STATES MAGISTRATE JUDGE